Good morning, Your Honors, and may it please the Court. Greta Wiesner for the appellants, Manda and Alfonso Roberson. May I reserve three minutes for rebuttal? The Roberson's have plausibly alleged that the Dakota Boys & Girls Ranch acted under color of law for purposes of Section 1983 when it detained and treated their daughter for over 40 days after she was adjudicated delinquent and sentenced to a year in correctional custody. The ranch took over the state's delegation of the power to incarcerate AAR and the constitutional duty to provide for her medical care. That makes the ranch a state actor under the Supreme Court's decision in West v. Atkins. She wasn't really incarcerated, was she? Wasn't she being civilly detained? No, Your Honor. She was adjudicated delinquent in a state court after that court found beyond a what would be a crime if she were an adult. And in that juvenile court order, the custody of her parents is terminated and she is placed in the custody of the Department of Corrections. And the Department of Corrections is given essentially unfettered authority to select placements for AAR, including for treatment. And that is exactly what the state did. It selected the ranch as AAR's placement for a period of four months of her incarceration. It certainly did not terminate her incarceration. But to the extent the court is skeptical that the ranch was exercising a correctional power, certainly the Robersons have plausibly alleged that the ranch was providing for her medical care. And that is medical care that she was entitled to under the Eighth Amendment. That brings this case clearly under the Supreme Court's decision in West v. Atkins. And there the Supreme Court explained that where a person has a constitutional right to adequate medical care and the state chooses to meet that obligation using a private provider, the private provider that voluntarily takes over that duty is acting under color of state law. So essentially, by outsourcing AAR's medical care to a private entity, the state clothed the ranch with the authority of state law. Roberts. Counsel, this court is required, of course, at the pleading stage to make reasonable inferences in your favor. But why didn't the Robersons just seek leave to amend their complaint to add some more factual allegations so that we don't have to go through this? Your Honor, the district court dismissed this case with prejudice without granting leave to amend, which is the final and appealable order. The Robersons are not seeking to amend their complaint. They stand by the allegations in their complaint, which plausibly allege state action, under at least two different theories. The allegations in this complaint, as I've explained, meet the standard in West v. Atkins, as well as the standard set by this Court in Jane Doe v. Northolme's side. I have the complaint here, but just tell me in your own view, how clear are you about all the medical care? The complaint is very clear about AAR's medical care. Do you remember paragraphs of it that are? Sure. About medical, not about, you know, other authority issues. Certainly, Your Honor. Starting with paragraph 8, the Robersons plead that the ranch provides for residents medical care. The complaint pleads that she saw multiple providers, and that's in multiple paragraphs, that she was seeing a psychologist on multiple occasions. The complaint pleads that the ranch was managing her prescription medications. And Can you tell me paragraphs occasionally on those? Yes. Or is that hard for you to do? No, I can easily pull those paragraphs for you, Your Honor. Prescribed is used a lot. I should have word searched. Prescribed is used a lot. Keep going. Yes. I would say, beginning at paragraph 19, all the way through paragraphs probably 29 is where there's a bulk of allegations about the medications for her plans. Notably, in paragraph 28, her treatment plan includes a State employee, a member of the Department of Juvenile Services, which falls under the correctional power of the State. And perhaps You know, I'm trying to stress medical. I hope I'm not too subtle about this. Oh, no, Your Honor. I would say perhaps most explicitly in paragraphs 147 and 148. Let me catch up to you. Sure. Seeing is believing. Go ahead. Yes. In paragraphs 147 and 148, the Roberson's plead that she had a severe mental illness and suicidal ideations, which are serious medical needs, and that those are that the ranch and its employees had a constitutional duty to provide for that medical care. You trend toward, that is the count itself. You get to conclusions there.  Yes. And I would add to prescribed medication, moving beyond paragraphs 29, paragraph 40 discusses her psychological evaluation, her mental decomposition in paragraph 48. In paragraph 61, But in 48, you have a lot of passive verbs. But in 48, you get away from that a little bit by having active something. Do you ever say who, Joanna Soldom or whoever, however you say the name, do you ever say who employs her? I believe in the treatment plan, Your Honor, which is on paragraph 28, lists the titles of these treatment providers. So whether they're a therapist, a clinical director, a psychiatrist, psychologist. But they're all with the ranch. Yes, they're all with the ranch. They're all employees of the ranch. Your Honor. Except the one State worker that you point out is a State worker. Your Honor, not necessarily employees of the ranch. For example, the DJS worker in paragraph 28, that's an employee of the State. Yes, I knew that. And certainly, the Robersons would explore on discovery the employment relationship between the ranch and many of these providers. But we're at the motion-to-dismiss stage, and the Robersons can only plead the allegations that they know. Before they have discovery, all they need is to plausibly allege State action. And certainly, they easily clear that fairly low bar by pleading that the State place AAR at the ranch to meet her serious mental health needs. I would direct the Court towards the decision in Probst out of the Southern District of Ohio, which was applying West in tragically similar factual circumstances. In that case, an incarcerated youth offender hanged himself with his bedsheet, and his mother sued the private nonprofit that provided suicide screenings. And as the Court explained there, when an incarcerated juvenile expresses an intent to commit suicide, as AAR did when she ingested dish detergent with the stated intent of killing herself, the child's mental health becomes a serious medical need that the State must address. Here, the State chose to address that need by placing AAR at the ranch. And certainly, that's alleged in Paragraph 8, I would say 8 through 11 in particular, which allege that the ranch was selected as her PRTF-level placement after her multiple run-ins with the law, and then Paragraphs 15 through 18, which explain that trajectory, that she was incarcerated by the State, she was brought into juvenile detention, and then she was brought directly to the ranch and admitted for that psychiatric level of care. – Let me ask you, if we were to extend West, as you request, and as you say this Ohio District Court did, would that expose foster parents to 1983 liability? – No, Your Honor. West is based on claims under the Eighth Amendment, and you would need the State to trigger someone's Eighth Amendment rights, and in this case, the State did so by adjudicating AAR delinquent and placing her— – Isn't it pretty clear under North Dakota law that delinquency is not a criminal determination? – Certainly, the juvenile justice system is considered quasi-criminal. In this case, the juvenile court order finds beyond a reasonable doubt that AAR committed what would be a criminal offense, a misdemeanor offense, of resisting arrest when she was— – But don't the statutes say no child may be termed a criminal because of any adjudication or disposition? – Your Honor, certainly this court, just less than a year ago in Jane Doe v. North Holmes, treated juvenile detention as a type of incarceration. – Yeah, but in that case, there was actually placed into a correction facility, right? – Yes, Your Honor, but I would submit that in this case, it's actually a stronger case than North Holmes, whereas in North Holmes, the court was weighing the facts and circumstances to determine whether a child who was never adjudicated delinquent and whose foster parent consented to her placement at North Holmes was truly incarcerated. – But the ranch isn't a correction facility, is it? – Your Honor, it's a PRTF-level facility, but more important than the label— – Sorry, what is PRTF? – A psychiatric residential treatment facility. But certainly more important than the label is the power of that private facility to detain the child. And in this case, the ranch derived its power to deprive AAR of her liberty and to stop her parents from picking her up and selecting her medical care providers because the court adjudicated her delinquent. She was in the custody of the Department of Corrections, and the ranch has conceded that she was not allowed to leave the ranch and that her parents could not pick her up because of that juvenile court order. So in this case, the State's exercise of its carceral or correctional power is actually clearer than in North Holmes. But certainly— – A State law-ish point that may be relevant. Boy, in the States, juvenile ranges— They usually say, like Judge Grunder quoted, that it's rehabilitative and not criminal. But they range all across the board in what they can do and can't do. Very serious situations to not so serious. You used the term quasi-criminal. Were you quoting the North Dakota Supreme Court or legislature or some authoritative body, or was that your assessment? Your Honor, that is not quoted from North Dakota State law. Certainly in the Supreme Court's treatment of juvenile justice cases— Now, wait. Are you doing North Dakota Supreme Court? No, not North Dakota Supreme Court. U.S. Yes, this is a case under Section 1983 under federal law. But certainly the Supreme Court— I get that. But Judge Grunder's question was, the very good question is, they typically say it's rehabilitation when they send someone to prison for five years. Yes, certainly the primary purpose of juvenile justice is typically rehabilitation. But in this case, it's the source of that entity's power to detain the child and deprive them of their liberties. I can't resist pursuing it. One more question, which is, do you know if there's any North Dakota authority—you have a Supreme Court—if there's any North Dakota authority about the quasi-criminal sort of approach? No, Your Honor, I'm not aware of any North Dakota cases finding that. And certainly, the Robesons have also plausibly alleged state action under a joint activity theory, and that is that providing residential treatment to incarcerated persons under this Court's decision in Americans United, and as applied specifically to juvenile detention in High Pipe, is also state action under color of law. I'll reserve my remaining time for rebuttal. Thank you, Your Honors. Mr. Behrman, when you're ready. Thank you, Your Honors. May it please the Court. Counsel, my name is William Behrman, and I represent the Appalese, the Dakota Boys and Girls Ranch, Shauna Faye Holwiger, and Ebony James. The district court's order and dismissal of the Robesons' complaint should be affirmed because the complaint lacks sufficient factual allegations to plausibly assert a Section 1983 claim against the ranch, Holwiger, and James. More specifically, the complaint lacks sufficient factual allegations to plausibly assert the ranch and its employees were state actors that were acting under color of state law. For a 1983 claim, private— What about the medical treatment, the West approach? With respect to the medical treatment, Your Honor, we need to first go back to the factual allegations in the complaint and what have the Robesons set forth in their allegations to assert that the state engaged in some type of joint activity with the Dakota Boys and Girls Ranch to take care of this ward's medical treatment. And if we go through that complaint, there is simply not the factual allegations similar to the situation in West to plausibly plead that claim. In West, we have a contractual relationship, which the court specifically noted was not sufficient— Counsel, you know the U.S. Supreme Court said a contract doesn't matter. Go ahead. Correct. That is— Be voluntary. Go ahead. Yes. That is correct, Your Honor, that the contract itself wasn't enough. Proceed. It was about the relationship between the doctor, between the state, and the individual receiving the services. That's what the court is supposed to look at. And when we review this complaint, that relationship is not defined with sufficient factual allegations to establish some type of joint activity, a meeting of the minds that the Dakota Boys and Girls Ranch and its employees are working in concert with the state to provide this type of medical treatment for wards. Those factual allegations are lacking, and for that reason, the complaint has not set forth a plausible claim under 1983 pursuant to West. Counsel, I have a related but more general question. The district court seems to have based its dismissal largely on its conclusion that, quote, the sole allegation as to the state actor issue is in paragraph 11 of the complaint. Now, I can find, I think, at least 10 other paragraphs that have factual allegations related to the state actor. Could you address, first of all, paragraph 8, placement at the ranch after multiple run-ins with the law? Also, paragraph 15, she's awarded the state after legal issues. Paragraph 16, placement at a correctional center. Paragraph 18, being taken from the correctional center to the ranch. There were also allegations that the TJS participated in her treatment plan. There are several allegations regarding an escape attempt and several regarding punishment. Don't those factual allegations contradict the conclusion of the district court? Your Honor, those factual allegations, when viewed in the light most favorable to the Robersons, do not contradict the district court's finding that the only real plausible allegation of state action was licensure and accreditation. Yes, there are allegations in the complaint regarding actions taken by the ranch after AAR is admitted, but those allegations are not tied to the state in any form or fashion pursuant to the idea that the state was involved in the oversight or control. Well, awarded the state is tied to the state. You said in any form or fashion, and that's paragraph 15. Sure. Thank you, Your Honor. I apologize for any misstatement there, but They do have a lot of passives, you know, was placed, was taken, was admitted. You know, they have several passives here that I suspect the district court also reacted to. But now, if we have a doubt about the passive, and it's right after that, you know how those paragraphs 15 and 16 go. It says, as a result, and it means of the previous paragraph. Don't we read those favorable to the plaintiff? Correct. Favorable to the plaintiff that So placed there by the state. Placed into the Youth Correctional Center in Mandan, which is a state facility. And then as part of that placement, roughly 65 days later, there is a suicide attempt. And the next allegation is that she was taken from the Youth Correctional Center and admitted to the ranch for psychiatric residential treatment facility level of care. Counsel, aren't you asking this court to make an inference that she was no longer in custody for correctional purposes? No, Your Honor. Where in the record is there any indication, or in the complaint rather,  That is not addressed in the complaint, Your Honor. There are no allegations discussing a transfer in that custody. And that's where, when we take a look at paragraph 18, 17, 16, and 15, the admission process is not explained. There are not sufficient factual allegations to show that the state was delegating. Well, now, wait. If the state took her, if it was taken by the state, was admitted by the state, that'd be good, right? So it's the left out passive part of it. And you want us to infer it means not the state. Infer the allegations against the plaintiff. Well, with that, Your Honor, as well, we also have specific law in North Dakota regarding the operation of the psychiatric residential treatment facility in that admission process. And that admission process, as a matter of law, is not controlled by the state. The state has- The wards of the state, it's not? They can override the state on a ward? No, they can't. So I don't think what you said proved anything. For admission to a psychiatric residential treatment facility, Your Honor, specifically as it's laid forth under the North Dakota Century Code and the administrative code, there is a certification of need that is required. And that must be provided by independent doctors, an independent team that is not associated with the facility, or the state finding that this is an individual who is in need of serious psychoactive psychological treatment in a setting that cannot be found in a less restrictive setting in the community. And once that has been issued, then an individual may be admitted to such a facility. If they're a ward of the state, only if the state says so, right? If the state finds is- No, if they are a ward of the state, only if the state says so. Surely, right?  Correct, Your Honor. Thank you. What about the fact that state workers are working on her during this period of time? And that would be the allegation with respect to the Department of Juvenile Services worker being a part of her involved in AAR's treatment. The allegation in this complaint comes from the treatment plan, which identifies a variety of individuals, a clinical director, including her parents, but that this is the individual that it appears to be from the state of North Dakota that is overseeing AAR in some form or fashion, and that she is a part of this plan. That would be in accordance with North Dakota law for individuals that are a delinquent setting that if there is a placement, there needs to be reports provided back to the state as part of that. But this allegation alone is not sufficient to show that type of joint activity, that mutual meeting of the minds to engage in some form of a constitutional deprivation for AAR. Counsel, according to the complaint, was she free to leave? The complaint discusses allegations that there were restrictions because of her prior elopement. Were her parents free to choose her medical care other than what was provided by the state? Based on the fact that she was adjudicated a delinquent and in the custody of the Department of Corrections, my understanding reading the complaint in the light most favorable to the plaintiffs would be is that her parents could not come and take her out of the facility. That would have to be something that was controlled by the Department of Juvenile Services. But getting to the elopement issue, Your Honor, we're also talking about a private facility that provides residential or psychiatric residential treatment to a variety of children in the community. It's not limited to wards. And in taking that responsibility on for individuals between the ages of 12 and 18, they have a duty and responsibility to care for them, to look out for their safety, for the members of the community, and that these individuals cannot just be left leaving a facility and roaming around. And when we take a look at the allegation on the date of the incident, October 2nd, this was also — there's some additional facts there. She'd gotten into a fight with other residents and then tried escaping. The ranch, within its powers and duties, as it would have with any other client in the facility, took action for her own safety, for the other residents' safety. There are no allegations that that power to stop her from escaping is something that was specifically granted by the state of North Dakota or a delegation of those duties. By all accounts, it is the private facility fulfilling its obligations to run that facility. She was 12 at all these times, right? That is correct, Your Honor. When we look at this complaint, when we're talking about allegations of State action, when we're talking about sufficient factual allegations for potentially constitutional medical care, we need to look at — we sift the facts of the complaint. And that's what this Court recently did in Dole v. North Holmes. And in that case, the District Court relied on it to take a look at what was considered to be a sufficient factual allegation. And in that complaint, we had actual claims by the plaintiff that North Holmes cared for juveniles whose liberties the State had decided to restrict, that the State had empowered North Holmes to run two units through which North Holmes could deprive residents of their power to detain residents in a correctional facility. Well, they have the conclusion in there. They were holding her hostage. Correct. You're aware that's in the complaint. I get it that's bordering on conclusion, but it also communicates. And it's active voice. Correct, Your Honor. In that, the allegation that the — North Holmes had moved her into and detained her in a correctional unit was really one of the significant facts that appears this Court relied on to find that North Holmes was engaging in a public function. But isn't that, in effect, what they allege here as well, that she's being held in a correction facility? Your Honor, sifting — By the Department of Corrections? Sifting through the allegations in the complaint. Originally, she does appear to be held in some form of a correctional facility at the YCC in Mandat. But then there's the admission to the psychiatric residential treatment facility. There are no allegations connecting that the psychiatric residential treatment facility constitutes a correctional facility, that it is a correctional unit, or that the state of North Dakota had empowered this facility to act as a correctional unit. And without those types of allegations, this complaint stands in stark contrast to the allegations found in Doe for plausibility of state action. Doe doesn't mention medical treatment at all, does it? There are very few allegations there. That is correct, Your Honor. It does not address medical treatment. I think there's one sentence or one reference. I'm looking for it here. Here it is. Go ahead. Yes. And that brings up an important point. When we look at these cases, whether it is Doe, whether it is LeMoyne, the High Pipe case, these are all instances with juveniles being sent for some form of rehabilitation, for some form of treatment, in addition to juvenile incarceration at this specific facility. But there's no analysis or bright-line ruling that that medical treatment is considered constitutionally required, and there's no analysis providing that. It provides a little bit of a distinction, Your Honor, that none of the cases being relied on has specifically found that the simple placement of a ward in another treatment facility satisfies the test in West. There is no bright-line rule for that specifically, and that's why we need to go back to the specific factual allegations in the complaint to determine whether that state action has been plausibly alleged. For purposes of this action, it is worthwhile or it is worth mentioning that there are no cases establishing that the operation of a psychiatric residential treatment facility constitutes state action. There's no cases or other authority holding or providing that an individual in a psychiatric Well, what about cases like Rodriguez out of the Seventh Circuit? Staff members at a private hospital were state actors. That's where the hospital held the person for several days because the local people told them to, and they did the treatment during that period of time. Correct, Your Honor. And that was a dismissal too that was reversed by the Seventh Circuit, and even the Connor case in the Fourth Circuit. So I don't think you're quite correct in saying there's nothing like it, but go ahead. Are you familiar with Rodriguez? You should reply to it if you know it. I understand the distinction between a hospital, and my analysis was specific to a psychiatric residential treatment facility, which is a unique type of facility under the law in North Dakota and federally. But for purposes of this appeal and the state action test, looking to the factual allegations in the complaint, did the state compel the ranch and its employees to act as it did? No. Was there a symbiotic relationship alleged in the complaint between the ranch and the state? No. Was the ranch providing a public function traditionally handled by the state? No. While the federal pleading standard is quite liberal, there is still a standard to meet, and the Roberson's complaint simply lacks the sufficient factual allegations needed to plausibly assert the ranch, Holweger, and James are acting under color of state law. Accordingly, the district court's order should be affirmed. Thank you. Thank you, Mr. Behrman. Your Honors, I have two final points to make, focusing on the procedural posture of this case. The first is that at the motion to dismiss stage, the complaint should be read as a whole, not parsed piece by piece, and the Roberson's are titled to reasonable inferences in their favor. So certainly, while Judge Benson finds the passive voice inartful, it can be inferred from the complaint, and in fact, must be inferred, that it is the state that is the that is moving and transferring and making decisions on behalf of juvenile ward in correctional custody. And in fact, that is supported by the juvenile court order that the district court considered as necessarily embraced by the pleadings and as a public record, which can be found in the addendum at 17 to 21. My second point is that this is a highly fact-bound question, state action. This court and the Supreme Court have emphasized that determining whether private conduct is fairly attributable to the state requires a sifting of the facts and a weighing of the circumstances, and that it is not subject to bright lines and rigid interpretation. Those types of fact-intensive inquiries are more properly conducted at the summary judgment stage after the Roberson's have been entitled to discovery regarding the relevant facts. To return for a moment to the passive voice, the Roberson's cannot plead what they do not know. They lost their child to the juvenile justice system, and then to the ranch's deliberate indifference. And upon discovery, certainly they will explore whether there are contractual relationships or agreements to place AAR specifically at the ranch, and whether there are agreements or contracts more generally for the ranch to accept adjudicated delinquent children. But certainly for the purposes of a motion to dismiss, the Roberson's have plausibly alleged that by agreeing to take over AAR's state-imposed detention and constitutionally protected mental health care, that the ranch was acting under color of law for purposes of Section 1983. The state can't extinguish AAR's Eighth Amendment rights by simply transferring her identity. So the Roberson's respectfully ask this Court to reverse the district court's dismissal and remand for further proceedings. Thank you, Your Honors. Very well. Thank you. It's an interesting issue, and the case is submitted.